UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,                     Criminal No. 24-cr-20527

v.                                      Hon. Kimberly G. Altman

Bernard Rice,

       Defendant.
_____ /

## GOVERNMENT'S SENTENCING MEMORANDUM

Bernard Rice conspired with others to steal personal, private images of unsuspecting women for Rice and his co-conspirators' enjoyment and, in some instances, where those images had been posted for the whole world to access without the knowledge or consent of the victims.

Because of Rice's conduct and the gravity of the offense he committed, the United States asks the Court to impose a sentence within the guideline range, and order Rice to pay restitution. Such a sentence would be "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

1

I.      **Facts and Procedural History**

    A.      **The Offense**

On August 17, 2020, the FBI received information from a person (AV-1), who lived in Illinois, about a group of individuals posting images of nude and semi-nude photographs of females, some of whom were minors at the time the images were taken, on the anonymous image board website, AnonIB.ru. This group of individuals focused on images of women who formerly attended a high school in the Eastern District of Michigan. AV-1 provided information indicating that some of the women had their social media and cloud storage accounts accessed without their permission to obtain the images that were posted. In addition, at least one of the women appeared to have been threatened to produce additional images.

In August 2020, an FBI agent in Detroit reviewed the AnonIB.ru webpage. The agent's review showed that the website's primary purpose appeared to be the anonymous posting of images, with organization by country, region, or state, and then further specificity, often a specific school, zip code, or area code. The agent located the threads reported by AV-1 and confirmed those threads contained numerous images of nude

or semi-nude women interspersed with comments made by anonymous users, which requested more images of the women previously posted, requested an unposted woman's images, or discussed the identity of the woman in the image posted previously.

Most of the posters used what appeared to be the default username: "Anonymous;" however, some used a username entered by the user. Many of the posts in the threads associated with the particular high school were from the users with usernames "ΔS," or a variant thereof, or "VZ," or a variant thereof.

In an August 19, 2020 interview, AV-1 told agents that she found out about the website days prior from another victim (AV-7), who told AV-1 that there were images of her posted there. AV-1 found four images of herself posted, in which she was nude or semi-nude, and all the images were taken using Snapchat. AV-1 said that she had only sent the posted images to her boyfriend at the time and no one else. The posts of AV-1 were posted by the username "VZ," later identified as Michael Justus.

On August 24, 2020, the FBI agent interviewed AV-2, who lived in the Eastern District of Michigan. AV-2 found out about the website on

August 14, 2020, from AV-1. When she reviewed the website, AV-2 found three nude images of herself. The post had been made by username "Triangle Guy," a variant of "ΔS," (later identified as Daniel Bihn) on June 24, 2020. AV-2 took the images of herself about two years before using Snapchat and stored them in the "My Eyes Only" section of the application, which requires an additional passcode to access. AV-2 only sent them to one person at the time she took them. But AV-2 also reported that she received at least three notifications from Snapchat regarding unknown logins to her Snapchat account, at least one of which came from a Google Pixel 2 telephone, the same type of phone used by Bihn.

On August 26, 2020, the agent contacted and interviewed AV-8, who lived in the Eastern District of Michigan. AV-8 said a photo of her was posted in 2017 on the website and reported to the police. This image was saved in Snapchat and never sent to anyone. Like AV-2, on three occasions in 2016 and 2017, AV-8 received notifications that someone had tried to login to her Snapchat account. AV-8 deleted the image from her Snapchat account in 2017 after the initial posting. The

same image of her with her exposed breasts was reposted on June 10, 2020, by "Anonymous."

AV-3 was interviewed on August 31, 2020. AV-3 lived in the Eastern District of Michigan and said she found out about the website in February 2020 when she heard some of her friends' images had been posted there. In June or July 2020, she heard that there were images of her posted. AV-3 reviewed the website and found semi-nude images of herself, where some of her friends were also depicted semi-nude. The posted images were taken when AV-3 and her friends, including AV-4, were on a trip to Miami, Florida in May of 2018. AV-4 had taken most of the images using Snapchat. AV-3 saw a post in which the poster claimed to have access to her Snapchat account, but the poster then later said that AV-3 had changed the password. AV-3 received messages on Instagram from a username "mapas847," asking for additional nude images and included some of the photos that had been posted on the website. The posts of AV-3 were created by Bihn, Justus, and "Anonymous." The poster who claimed to have AV-3's password and later posted a semi-nude image of her used the default username "Anonymous."

5

On September 1, 2020, the FBI agent interviewed AV-4, who also lived in the Eastern District of Michigan. During the interview, AV-4 said her Snapchat account had likely been hacked around March 2020 after she provided a password to her personal trainer and her personal trainer told her that her account had been hacked. About one month later, AV-4 tried to login to her Snapchat account, and she could not. A friend messaged AV-4, saying she had received a message from AV-4's account asking for her password. After resetting her Snapchat password, AV-4 saw messages to six of her friends asking for their passwords. Around August 2020, AV-4 received a message from a friend telling her that there were images of her posted on the AnonIB.ru website. AV-4 looked at the website and confirmed the images had been in her Snapchat account. These were the same images as described by AV-3 above. AV-4 also received some "weird" messages on Instagram from username "mapas847," but blocked the account. The posts of images of AV-4 were found to have been made by username "ΔS" (Bihn) or "Anonymous."

On September 2, 2020, the FBI agent interviewed AV-5, who lived in the Western District of Michigan. Like the other victims, AV-5 found

6

out about Anon.IB.ru, reviewed it, and found an image of herself. This happened around April 2020. The image was from her Instagram account and taken in April 2017 when she was 17 years old. In the original image, AV-5 was wearing a bathing suit; but, the posted image had been manipulated to make it look like she was nude. The image was posted by username "Anonymous" who stated in the post: "Fakes but best I got." Later, in October 2020, AV-5 reported that a Google Pixel 2 (the same kind of phone as Bihn) was used to attempt to login to her Snapchat and Gmail accounts.

### B. Members of the conspiracy

The FBI subpoenaed the Snapchat and associated email accounts of the victims described above to obtain IP log information for these accounts. The IP logs showed that at least the Snapchat account of AV-2 and AV-4, and the Google account of AV-2, were accessed by IP addresses associated with Bihn's phone and residence. Thus, posts of the images of AV-2, AV-3, and AV-4, and the associated hacking into the Snapchat accounts, were linked to Bihn.

A January 14, 2021 federal search warrant execution at Bihn's residence led to additional information. Investigators learned that Bihn

had been invited to a group on Discord, another messaging application, where people would post additional nude images of women who had attended the particular high school in the Eastern District of Michigan. Another user in that group, "vz_br" (Justus) reached out to Bihn and invited him to a more private group where Bihn, Justus and Rice shared with each other nude images of women they knew, many of which they had unlawfully obtained.

Ultimately, the investigation showed that Bihn was the most skilled at hacking into people's social media accounts without the user's consent or knowledge. Rice and Justus would share lists with Bihn of women who went to the high school during a particular time frame that they wanted to Bihn to hack to obtain images.

On June 22, 2021, law enforcement executed a search warrant in the Northern District of Illinois at Justus' residence. Justus agreed to be interviewed and provided consent to search his Discord account. That account contained a chat between Justus and Rice that took place between February 12, 2019, and December 26, 2020. The conversation primarily focused on the scheme of obtaining and sharing nude images of women that the two knew in real life.

For example, on February 17, 2019, the following conversation occurred:

| | |
|---|---|
| Rice: | yeah delta has some shit; i dont have time to do all that |
| Justus: | the more girls from 11, the more collages i can make |
| Rice: | worddddd; hes in ddep haha; deep |
| Justus: | yeah its pretty shady shit; but i dont mind haha; i just happen to be online when he comes around some times |
| Rice: | nor do i |
| Justus: | so i just have a convo and he posts |
| Rice: | yeah you always save it bro |
| Justus: | |
| Rice: | have a feeling he lilkes to show off his skills; and cant really to anyone; so we benefit haha |
| Justus: | haha yeah might be |
| Rice: | i mean a stingray; cmon |
| Justus: | he also doesnt ask for anything in return |
| Rice: | haha; thats hardcore |
| Justus: | lol yeah hes very…. Creative |
| Rice: | i like it lol |
| Justus: | i always just tell him to stay out of trouble; for our sakes lol; keep the content coming; oddly enough, he keeps mentioning the list i made; glad i took the time to make it haha |
| Rice: | thats good; hes trying haha; gives him a goal i guess |
| Justus: | right; im sad he got into [potential victim's name] and there was nothing there; wouldve been a homerun |

Other times during the conversation, Rice discussed knowing that

9

Bihn was a hacker and the two talked about images of certain victims and storing images on drives. But on August 14, 2019, Justus and Rice discussed a list put together by Rice for Bihn to obtain images:

> Justus: very interested to see your list and see if there's any blatant misses on my end
> Rice: mines not extensive at all; jus got aroudn to it lol
> Justus: lol lemme check dis shit; [nickname of potential victim], hell yeah lol; underrated [name of potential victim] but she's cute; nice add
> Rice: good stuff
> Justus: [name of potential victim] fuck, yeah didnt think of her

Discord records also showed on June 15, 2021, Rice knew about Bihn and Justus' activity on the AnonIB board, saying to Justus: "i didn't have that [identified victim's name] *ss pic you posted in anon; lmao good shit." The two then discussed Justus' plans with Bihn to get people to post more nude images on the AnonIB website, with Justus saying, "delta and i were talking that i can monitor the board and tease people when they deserve it; but no response to his [identified victim's name] post all weekend; not gonna give the crowd anything until they contribute." Further, Discord records showed Rice asking on June 18, 2021, for images of a specific potential victim. Rice asked: "Any chance

10

you have this girl? she used to date one of my friends and had a huge *ss?" He then provided the URL to the Facebook account of the potential victim. Lastly, Discord records showed on October 6, 2020, after Justus asked if Rice has any new images of females recently, he responded: "few new [name of potential victim] on my home computer.

### C. Execution of search warrant at Rice's residence

On January 21, 2022, authorities executed a federal search warrant at Rice's California apartment. Rice was not home at the time, but electronic devices that were in the residence were seized and sent to Detroit for review. Three of the seized items contained evidence relating to the conspiracy. But law enforcement also found known child sexually abusive images and videos that were identified by hash value.

### D. Information and Plea

On September 23, 2024, an Information was filed charging Rice, Justus, and Bihn with crimes relating to computer fraud. Rice was charged with obtaining information from a protected computer (Count 2), in violation of 18 U.S.C. §§ 1030(a)(2)(C), 2. On October 24, 2024, Rice consented to pled before a United States Magistrate Judge, and he made his initial appearance on November 15, 2024, where he was

11

placed on bond. On January 24, 2025, Rice entered a guilty plea without a Rule 11 agreement to Count 2 of the Information.

## II. Relevant 18 U.S.C. § 3553(a) Factors

### A. The Sentencing Guidelines Range

Although advisory, the Sentencing Guidelines remain an important factor under Section 3553(a) in fashioning an appropriate sentence. As noted in *United States v. Rita*, 551 U.S. 338, 345 (2007), "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."

The United States Probation Office calculated Rice's criminal history category to be I and offense level to be 4, resulting in a sentencing guideline range of 0 to 6 months imprisonment. PSR ¶ 74. The statutory maximum term of imprisonment for Count 2 is one year. For the reasons set forth below, the United States asks that the Court impose a sentence within the guidelines, and order Rice to pay restitution to in the amount of $4,079.93 to AV-2 and $2,000 to AV-3.

## B. Nature and circumstances of the offense and history and characteristics of Rice, 18 U.S.C. § 3553(a)(1)

The nature and circumstances of Rice's offense call for a guideline sentence. Rice worked with Bihn and Justus to violate the privacy of multiple victims in the worst way, all for their own amusement and gratification. The group conspired to obtain images from the Snapchat accounts of women with whom they had attended high school, and then to share those intimate images amongst themselves or with the world on an anonymous Russian website. The women did not consent to, and did not even realize, what was happening. Further, when authorities executed a search warrant at Rice's California home, they found his electronic devices to contain known images and videos of child pornography that were identified by hash value. Rice (and his co-conspirators) committed a deeply violative offense that degraded his victims, all for sport and gratification.

Like the nature and circumstance of his offense, Rice's personal history and characteristics also call for a sentence within the guideline range. For the most part, Rice experienced a privileged upbringing. He has no prior criminal history. Further, at the time he committed the offense in this case, he was educated and has been gainfully employed.

13

A sentence within the guideline range would acknowledge Rice's lack of criminal history and negative behavior (outside of the offense conduct) while balancing the traumatic, invasive nature of his offense.

### C. Seriousness of the Offense, Adequate Deterrence, and Protecting the Public, 18 U.S.C. § 3553(a)(2)(B) and (C)

A guideline sentence would also reflect the seriousness of the offense and provide adequate deterrence. One measure of the seriousness of Rice's offense can be taken by considering the impact Rice's actions have had on his victims. In a victim impact statement provided to the Probation Department, AV-2 stated:

> *When I found out my private photos had been posted online, I began having daily panic attacks multiple times per day, could not leave my house, had to start weekly therapy, ... I am still working through this trauma to this day, and completed EMDR therapy and am in therapy monthly still...*

PSR ¶ 29. AV-3 also provided a victim impact statement where she also described the impact that the offense conduct has had on her life:

> *Defamation of character as well as exposure of privacy, invasion of privacy and personal information led to emotional trauma and damage. Paying out of pocket having to go back to therapy wasn't something I planned on…*

*Id.* The sentiments expressed in these statements underscore the seriousness of Rice's offense by highlighting the tangible emotional trauma, as well as practical inconveniences suffered by the victims.

In this digital age, where many people, like the victims here, keep their most private information stored on phones or within the password-protected servers of various companies, the offense Rice committed is very serious. In fact, the seriousness of this kind of offense was recently acknowledged with the enactment of a new law, the Tools to Address Known Exploitation by Immobilizing Technological Deepfakes on Websites and Networks Act ("TAKE IT DOWN Act"), which in part criminalizes the publication of intimate images of non-minors, 47 U.S.C. § 223(h)(2)(A)– the same conduct Rice and his co-conspirators committed. This same conduct is now punishable under the Take it Down Act by up to two years imprisonment.

The need for new laws to directly address the conduct committed by Rice and his co-conspirators is evidence of the proliferation of this kind of behavior. The sentence in this case should send a message to others who have or would seek to engage in this behavior that courts

take these offenses seriously and will impose punishments consistent with the gravity of the offense.

### D.    The Need to Provide Restitution, 18 U.S.C. § 3553(a)(7)

The provisions of the Mandatory Victim Restitution Act of 1996 apply in this case. Victims AV-2 and AV-3 provided requests for restitution related to counseling services they sought because of being a victim of Rice's offense. As part of the sentence in this case, the Court should order Rice to pay $4,079.93 for monetary losses she suffered because of Rice's offense. The Court should also order Rice to pay AV-3 $2,000, for the losses she suffered.

## III. Conclusion

For the above-stated reasons, the United States asks the Court to impose a sentence within the guidelines and order Rice to pay restitution to AV-2 and AV-3 in the amounts of $4,079.93 and $2,000, respectively.

                Respectfully Submitted,

                JEROME F. GORGON, JR.
                United States Attorney

                *s/Tara M. Hindelang*
                Tara M. Hindelang
                Assistant United States Attorney
                211 W. Fort Street, Suite 2001
                Detroit, MI 48226
                (313) 226-9543
                tara.hindelang@usdoj.gov

Dated: May 22, 2025

**Certificate of Service**

I certify that on May 22, 2025, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system, which will send notification to all counsel of record via email.

*s/Tara M. Hindelang*
TARA M. HINDELANG
Assistant United States Attorney
